ADAMS, J.

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
|  Plaintiff, | ) CASE NO. 1:25CR248 |
| v. | ) |
|  | ) Judge John R. Adams |
| JERON TATE, | ) |
|  | ) SENTENCING MEMORANDUM |
|  Defendant. | ) |

The Court began the sentencing hearing of Jeron Tate on January 27, 2026 and took the testimony of Christopher Giordano and Ryan Kron to assist in resolving the myriad objections raised by Defendant Jeron Tate. To assist the parties in preparing a for a final sentencing hearing, the Court will resolve Tate's objections based upon the record and testimony taken in Court.

For simplicity, the Court will address Tate's objections in the paragraph order that they are raised. Tate's objections begin with an objection to paragraph 7 of the presentence report ("PSR"). The paragraph reads:

> Beginning in May 2021, law enforcement investigated the drug trafficking organization (DTO) led by Jerone Tate, the same DTO of which Terrill Colbert and several others were members. During the multi-year investigation, law enforcement learned that Tate received large quantities of cocaine and fentanyl through different locations in the Northern District of Ohio. He also received narcotics to his restaurant, Incredible Foodz, located at 3936 Mayfield Road, Cleveland Heights, Ohio, 44121. Tate and Colbert stored narcotics at 2265 East 103rd Street, the residence of Terrill Colbert. Law enforcement learned that Jahobb Boyd cooked cocaine into crack cocaine at Colbert's residence. Law enforcement also determined that Colbert, Corey Carroll, and others sold narcotics that they obtained from Tate. They further determined that Tate's sister, Juanita Tate, and Jessie Ware distributed narcotics for the DTO. Ashley Sitgraves, Brittany Anderson, Sharde Williams, and Brittany Larkins were also identified as couriers

for the DTO.

Doc. 49 at 4-5. Tate contends that the statement above contains numerous factual inaccuracies. Notably, while Tate challenges many of these factual statements, he offers nothing beyond his conclusory statements that the facts asserted are incorrect. In any event, the Court need not resolve these specific objections as the paragraph correctly restates the *allegations* made by law enforcement following their investigation. As none of these facts will be accepted by the Court without any evidence and none have any impact on Tate's guideline calculation or ultimate sentence, the Court will not further review this objection.

Tate next objects to paragraphs 20 through 37 of the PSR. At times, it is unclear what actual, legal objection Tate raises. For example, paragraph 20 reads:

> In November 2022, law enforcement officers investigating the Tate DTO intercepted several parcels that contained suspected fentanyl. According to the case agent, investigators did not intercept parcels that were addressed to Jerone Tate or his restaurants, Incredible Foodz and Incredible Bistro. The parcels appeared to be related to the drug trafficking activities of Howard Lester.

Doc. 20. Tate objects stating that the paragraph has no factual connection to him. The paragraph at issue contains background investigation helping to explain how the investigation against Tate evolved over time, and Tate does not contend that there is any factual inaccuracy in the paragraph. As such, his objection to paragraph 20 lacks merit.

Tate's issues with paragraphs 21 through 37 appear to be that the paragraphs focus on a member of his drug trafficking organization ("DTO") and that much of the information is gleaned from a confidential source. Similar to Tate's original objection, Tate insists that the paragraphs are rife with factual inaccuracies, but he offers nothing beyond his own argument that the inaccuracies exist. The Court again notes that much of this background of the investigation has

no bearing on the Court's guideline calculation or sentencing decision. To the extent that the Court must make factual findings, it will do so based upon the evidence presented and will not simply rely upon the information presented in the PSR. These objections, therefore, are overruled.

Tate next objects to the PSR's conversion of cash found in his home, $55,010, into 1,441.319 grams of cocaine and an additional $8,100 found at co-conspirator Terrill Colbert's home to 212.228 grams of cocaine. Tate essentially argues that the money in his home could have come from a legitimate source, The Bistro restaurant, that was owned by his wife who also lived at the home. Tate further argues that he should not be responsible the money (and the additional drugs) found in Colbert's residence. The Court will address each argument in turn.

First, Tate is foreclosed from arguing that there is a legitimate source to the funds recovered from his residence. Within his plea agreement, Tate agreed as follows:

> The Defendant further agrees the $63,110.00 in U.S. Currency, constitutes or was derived from proceeds obtained directly, or indirectly, as a result of the criminal activity pled to herein, and/or was used or intended to be used in any manner or part to commit or to facilitate the criminal activity to the criminal activity pled to herein; and is, therefore, subject to forfeiture.

Doc. 29 at 3. As such, converting the $55,010 and $8,100 ($63,110 total) into drug weights was entirely consistent with Tate's admission in his plea agreement. His argument, therefore, lacks merit.

Similarly, the Court rejects the notion that is improper to attribute the drugs found at Colbert's residence to Tate. Colbert expressly claimed that the marijuana and cocaine found at his residence belonged to Tate. Moreover, "the enhancement of a sentence can be imposed [] on the basis of the defendant's conduct or the conduct of co-conspirators in furtherance of the

3

conspiracy that was known to the defendant or was reasonably foreseeable." *United States v. Gross*, 77 F. App'x 338, 343 (6th Cir. 2003)(citation omitted).  Given the scope of this DTO, the Court finds that it was reasonably foreseeable to Tate that Colbert would have the controlled substances that were found during the search of his residence.  Accordingly, they are properly attributed to Tate.  Notably, Tate conceded that the $8,100 in cash at Colbert's residence was a proceed of their joint criminal undertaking so it defies logic to suggest that *everything else* in Colbert's house was somehow unrelated to their drug trafficking.

> Tate next objects to paragraph 52 of the PSR which reads:
>
> On December 13, 2024, a search warrant was executed at Incredible Bistro, located at 26000 Chardon Road. Surveillance revealed Tyrone Tate leaving the bistro. A short time later, investigators approached the business and knocked on the door; however, no answer was received so entry was forced. Upon clearing the business, no one was located inside. Located inside the business in the office were eight plastic bags of suspected marijuana weighing 4,800 grams, and 5.352 grams of cocaine. Also observed in the bistro was a scale that contained suspected cocaine residue and sandwich bags located in the office of the bistro. The property owner of the building was contacted via telephone, and a contractor reported and boarded the front door to secure the business. The cocaine located in the restaurant was confirmed by a laboratory report completed by the drug Enforcement Administration.

Doc. 49 at 14.  Tate contends that he was not present for the search and that there "is zero evidence" that he knew drugs were located there.

The Court finds no merit in this contention.  Only 3 days before this search, law enforcement conducted a controlled buy from Tate at the Bistro for 1,004.48 grams of cocaine. Moreover, Tate was a de facto owner/manager of the Bistro and the drugs were found in a business office at the bar where one would expect an owner/manager. As such, there is more-than-ample basis to demonstrate that Tate would have knowledge of drugs being located the Bistro.  His

4

objection is overruled.

Tate's objections to paragraphs 53 and 59 and simply restatements of his objections to the drug quantity calculations that the Court rejected above.  Accordingly, those objections also lack merit.

In his final substantive objection, Tate objects to the application of the leader role enhancement proposed by the PSR.  U.S.S.G. § 3B1.1(a) provides that "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels."  Application Note 4 to § 3B1.1 describes the factors this Court must consider in applying this enhancement.

> In distinguishing a leadership and organizational role from one of mere management or supervision, titles such as "kingpin" or "boss" are not controlling. Factors the court should consider include the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others. There can, of course, be more than one person who qualifies as a leader or organizer of a criminal association or conspiracy.

Reviewing these factors compels application of the enhancement.

Initially, the Court notes that application note 2 to U.S.S.G. § 3B1.1(a) provides as follows:

> To qualify for an adjustment under this section, the defendant must have been the organizer, leader, manager, or supervisor of *one or more other participants*. An upward departure may be warranted, however, in the case of a defendant who did not organize, lead, manage, or supervise another participant, but who nevertheless exercised management responsibility over the property, assets, or activities of a criminal organization.

(emphasis added).  "The defendant need not have directed the activities of five or more persons; rather, five persons must have been involved in the conspiracy."  *United States v. Stewart*, 306

5

F.3d 295, 316 n.11 (6th Cir. 2002).

In support of this enhancement, the Government provided the testimony of Task Force Officer ("TFO") Christoper Giordano.  Giordano's testimony compels rejection of Tate's final objection.  For example, Giordano noted that Colbert admitted that he sold drugs on behalf of Tate and controlled the stash houses used by the drug organization.  However, the Court need not rely on solely that fact to find that Tate was a leader or organizer.  A confidential source also detailed that Jessie Ware sold drugs on behalf of Tate and that Jahobb Boyd cooked crack for Tate's drug organization.  This same source identified Anthony Boyd as yet another individual that sold drugs for Tate.  Yet another source identified T'Keyah Harris as an individual that assisted Tate in completing a purchase of 1 kilogram of cocaine by delivering the drugs to the source's vehicle.  This delivery occurred during the sole controlled buy involving Tate.

In other words, four different confidential sources identified Tate as the leader of this drug trafficking organization, and his co-defendant verified that status as well.  At least two of these sources noted that Tate took great pains to insulate himself from the day-to-day operations in an effort to evade law enforcement.  With respect to the statements of these sources, the Court notes:

> Statements derived from police investigations generally bear sufficient indicia of reliability. And we have recognized an important distinction between known informants and truly anonymous tipsters. So when an investigator speaks directly to a confidential informant whom the investigator considers reliable, it is permissible for the district court to consider the investigator's testimony regarding the informant's statements. That's especially true where the defendant personally met and dealt with the informant as well.

*United States v. Meza*, 843 F. App'x 592, 597 (5th Cir. 2021).   Given the fact that 1) many of the sources dealt directly with Tate, 2) the sources were known and vetted by law enforcement, 3) a

6

co-defendant also verified important portions of the information from the sources, and 4) the information appears to have largely been validated by police surveillance, the Court finds the information from the sources sufficiently reliable for sentencing.

Tate's argument against this enhancement appears to be focused upon his actions. Specifically, Tate seems to argue that because he was not surveilled with many of the individuals said to be working for him, the enhancement has not been proven. The Court disagrees. There is no requirement of visual validation of every piece of evidence that indicates that Tate is the leader of this drug trafficking organization. Given the overwhelming amount of evidence demonstrating his leadership role, the enhancement is properly applied.

Having resolved each of Tate's objections to the PSR, a separate notice will issue setting a hearing to finalize his sentencing.

IT IS SO ORDERED.


 February 13, 2026                           /s/John R. Adams
Date                                         JOHN R. ADAMS
                                             UNITED STATES DISTRICT JUDGE